See the next case, Porta Comm'n School Distri. v. Industrial Comm'n, 4090620. Counsel, please. May it please the Court, Counsel, my name is Steve Splezek, and I represent the employer, Porta Comm'n School Distri. The issue before the Court today is whether or not the Commission erred in awarding Temporary Tolerance Ability Benefits to Ms. Atterbury after December 5, 2006. The standard of review in the Commission's awarding of Temporary Tolerance Ability Benefits would be against the manifest weight of the evidence, as it is a finding of fact. The arbitrator and subsequently the Commission awarded Ms. Atterbury Temporary Tolerance Ability Benefits from October 10, 2006, when she began missing time from work, through the date of hearing, October 1, 2007. Starting on December 5, 2006, the School District Superintendent, Superintendent Brew, began sending letters to Ms. Atterbury asking her to come in for a meeting for, among other purposes, to discuss her return back to work within her restrictions. Ms. Atterbury testified that she did not see how light duty and her job went together, and she admitted on cross-examination that she never told the School District she was willing to return to work within her restrictions. Essentially what her testimony was is, they had all the medical documentation, they knew what was going on with my case, and I really couldn't give them any more information. However, the purpose of the Superintendent's correspondences to Ms. Atterbury was to arrange a meeting for her to come in and discuss what she can and cannot do, what types of job duties she would still be able to do within her restrictions. In our brief, I cite the cases of Pressen and Boker, which both hold that an employee who refuses to work light duty is not entitled to TTD. Now granted, we do admit that there was no formal offer of light duty made to Ms. Atterbury. But Dan, did the letter instruct her to return for light duty, or say that light duty was available? Did the wording of the letter actually say that? No, the wording of the letter did not. It said to discuss. It didn't direct her to do anything, did it? That's correct. It was to discuss a return back to light duty. It's our position that Ms. Atterbury's refusal to meet with Superintendent Beru is tantamount to a refusal to light duty. Now it's well within the reason and the responsibility of the school district, through the superintendent, to meet with Ms. Atterbury and talk to her about her restrictions, talk to her about the job duties, what goes on in the cafeteria, to determine what she can and cannot do before she's actually put into light duty. I take the position that it's unreasonable just to summarily send a letter or make a phone call to Ms. Atterbury and say, show up in the cafeteria and get to work within your restrictions. Well, I think that's irresponsible on the school district if they were to do that. I think what the superintendent did was ask her to come in, sit down, talk, let's discuss this light duty, let's get you back to work within your restrictions. She ignored the letters, never responded to the letters, never came into the meeting. So the step to get to the offer of the light duty was never undertaken and therefore the light duty was not offered. But I believe that her refusal to meet with the superintendent is the same thing as tantamount to a refusal to work in the light duty. Jumping ahead a little bit, does the ability, the mere ability to do light duty work, does that preclude a finding of TTD? Let's assume that they felt, does that in and of itself preclude a finding of TTD? No, I mean if the circumstances dictated that because of her restrictions, her restrictions were such that she couldn't do anything for the school district, then the fact that she's released to light duty doesn't preclude her from being entitled to TTD. So to accede to your position, we would have to find that the failure to respond to the letter, which admittedly did not instruct her to return to light duty work, is tantamount to declining it. I mean we have to make that conclusion, do we not? Yes, and I don't think that's too much of a leap or extension to make here. Like as I said before, I think it's irresponsible to throw somebody into an industrial cafeteria at a school district or a school and say get back to work without light duty. I think it's extremely reasonable, perfectly reasonable for the superintendent to say, come on in, sit down and talk to me. There's really no justification for her not to refuse to meet with the superintendent. Basically what the commission is doing is you're awarding her for thumbing her nose at the school district through the superintendent saying I'm not going to meet your request to meet with you and I'm not going to meet with you. So the commission goes ahead and says okay, based on that we'll give you TTD. I think you're awarding her for thumbing the nose at the school district when they were trying to work something out and get her back to light duty. As I believe the commission's decision in awarding the TTD that they did award was against the manifest weight of the evidence under the circumstances, we ask that you reverse the commission's decision, remand the case back to the commission and ask them for a determination of what TTD Ms. Atterbury is actually entitled to under the circumstances. Thank you. Counsel, please. Good afternoon, Your Honors. Todd Strong for the petitioner. Ms. Atterbury in this case. The issue in this case is, is there sufficient facts contained in the record to support the TTD award in this case? I think that the best summarization of the facts contained in this case was actually drafted by the arbitrator and affirmed by the commission. The arbitrator's decision states that the arbitrator finds the testimony of the petitioner to have more credibility in this case. The respondent's own witnesses admit that the petitioner was communicating her work status to the immediate supervisors. That was Judy Hollis, the cafeteria supervisor, her immediate supervisor, who the superintendent acknowledged on cross-examination was whose responsibility the petitioner was to report to concerning her work status. The commission decision goes on to state that the arbitrator finds that the respondent was failing to reasonably accommodate the restrictions. The basis of this opinion is due in part to the respondent's own witnesses, on the one hand, claiming to have no knowledge or a lack of knowledge of the petitioner's current condition during the period of rehabilitation, and on the other hand, having the superintendent acknowledge receipt of several medical documents which were contained in the personnel file. Did the claimant dispute receiving notice from the district office? Did the claimant dispute receiving notice come in and talk to the district office? She testified that she came in and spoke with the superintendent's secretary, who she was advised was in charge of coordinating work comp matters. When was this done? When did she respond to the letter or letters? I think the record indicates that the superintendent acknowledged that it was sometime in November that she responded to, I think, Ms. Runkle, if I've got my witnesses straight. Ms. Runkle, I think, was the unit secretary at the district office. Well, it's interesting because the letter from Bruce to the claimant was dated December 5th. There was, I think, three letters that were discussed or testified to by the respondents. I'm not sure which portion of the transcript you're referring to exactly. Letter dated December 5th that read, We have been unable to contact you after repeated attempts. We are requesting the status of your work as compensation referral. We would like to have an expected date of return. Did your client respond to that letter? Yes, her testimony was that she responded by providing work status slips, by providing medical records from the doctors, by providing a narrative report from Dr. Seneca, the orthopedic surgeon, giving explicit detail on her work status and so forth. So she responded with some records, but did not follow it up and go in for an interview or something? I think that's a question of fact that the commission weighed in favor of the petitioner. Her testimony was that she did respond. And that's where the factual dispute came down inside of the petitioner in this particular case. The record is pretty replete about her contacting the adjuster at Heinz Claims Management. She was continually being directed to report to her immediate supervisor, to report to the unit secretary, to report to the claims adjuster for Heinz Claims Management, all of which she was not. And the letter did not require her to personally appear at the district office, did it? No, it said contact the district office, which she says I was contacting the district office. Now, I think that the context that the superintendent is later trying to interpret those letters was contact me personally as opposed to contact my office, so to speak. So I think that there's plenty of disputed facts. Also, the denial of TDD benefits is asserted in this case because it was a four-cause termination. I think the technical reason for her petitioner's termination was insubordination. The respondent in its brief cited the interstate scaffolding appellate decision, which the Supreme Court has issued a new decision in January of this year, which I think was issued after our briefs were rendered in this case. And it says an employee who is entitled to receive workers' compensation benefits as a result of a work-related injury is later terminated for conduct unrelated to the injury. The employer's obligation to pay TDD workers' compensation benefits continues until the employee's medical condition has stabilized or she has reached maximum medical improvement, which is clearly not the case in this particular instance. The petitioner in this case falls squarely within the parameters of interstate scaffolding. This was tried on a 19B. One of the issues which the respondent has now conceded to was authorization for the shoulder surgery that the doctors had recommended. So at the time this case was arbitrated, we're in the midst of requesting authorization for medical treatment, getting medical care, and so forth. And the case was completely denied. And I think that the commission also cited that in their decision as to their wane of the credibility. In fact, the arbitrator and commission states in their decision that they place some suspect in the credibility of the respondent's witnesses by virtue of the fact that the issue of accident was placed in dispute, when in fact their witnesses are put on the stand and acknowledged that these accidents happened. So that, again, the commission considered and weighed the credibility of this petitioner. Their failure to call the immediate supervisor, Judy Hollis, who this petitioner was communicating with on a constant basis and bringing in her work. So for all of the above reasons, I think that the underlying report should be affirmed unless the court has no further questions. Thank you. Counsel, can you answer the last question first? In reviewing the letter, did the letter require the claimant to personally appear at the district office to discuss the situation? The initial letter did not. However... Sorry, the initial letter does not, and then the December 7th letter indicates I remain unable to contact you. And in turn, you have not contacted me in person by phone or mail. I am requesting a meeting on December 11th, 2006 at 8 o'clock a.m. in the superintendent's office to discuss why you have not shared medical information or approximate time of return to work. His position is that in response to that, did she send some records to the office? The first record indicates that the records were dropped off to the district's office prior to these letters being written. And the superintendent's testimony was in November. In fact, Dr. Seneca released Ms. Atterbury to light duty work as long as there was no significant lifting involved. That was the November 7th, 2006 visit. That documentation was dropped off at the district, and after that documentation was dropped off, then the letters from Superintendent Brew went out because he became aware that she was released to light duty work. And he testified that once he received knowledge of that, he wanted to meet with her and arrange a light duty work schedule for her. So I think that's the timeline that's supported by the record. I think that the record is clear. Superintendent Brew said she never responded to any of the letters he sent to her. Ms. Atterbury, I think she admitted on cross-examination, I believe she admitted on cross-examination that she never responded to those letters. The meeting never took place. This isn't really a credibility issue. We're not disputing that she provided medical updates to the school district. What we are disputing is that once the school district found out that she was released to light duty, they wanted to sit down and talk to her. And she refused to come in and meet with the superintendent despite the fact that the December 7th, 2011 said, please meet me on December 11th at 8 o'clock a.m. and we'll talk about your return to work and your medical status. She did not show up. Now granted, I'll grant that the first letter might be confusing. I was already at the district office a week ago, so that might be confusing. But once she gets the December 7th letter, that's pretty crystal clear. Show up on December 11th and meet with me at 8 o'clock and talk about your return back to work. So I think the record does support, based on the record, the commission's decision is against the manifest way to the evidence. Counsel brought up interstate scaffolding. Interstate scaffolding does not do away with the case law that existed previously that a refusal to work light duty precludes an entitlement to TTD. Thank you.